UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MATTHEW WARMAN, | : | Case No. 1:22-cv-229 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| MOUNT ST. JOSEPH UNIVERSITY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

**ORDER DENYING DEFENDANTS' JOINT MOTION TO DISMISS AND GRANTING LEAVE TO AMEND THE COMPLAINT**

This civil case is before the Court on Defendants' joint motion to dismiss (Doc. 10) and the parties' responsive memoranda (Docs. 15, 16).

## I. BACKGROUND

Plaintiff Matthew Warman brings this 36-page, 161-paragraph, 17-count complaint against Defendants Mount St. Joseph University (the "University"); Mount St. Joseph Police Department (the "Police Department"); Kevin Koo, Chief of Police of the Police Department; Norb Koopman, a Captain with the Police Department; Karen Elliot, Director of Mission and Ministry at the University; Amy Metzger a/k/a Amy Denko, a Health Services Manager at the University; Paige Ellerman, Esq., General Counsel at the University; Nancy Hinzman, Assistant Dean of the Department of Nursing at the University; John Does 1-20; and ABC Agency, Inc. 1-5. (Doc. 8). Warman brings a variety of different claims, some against all defendants and some against select defendants, and ranging from federal constitutional violations to state tort claims.

His claims arise from the following allegations.

Warman served in the United States Marines from 2014 through 2018, when he was medically discharged due to internal injuries and brain tumors. (*Id.* at ¶ 20). Warman has also been diagnosed with post-discharge depression and anxiety. (*Id.* at ¶ 22). In December 2020, Warman enrolled in the University's graduate nursing program, with an expected graduation date in spring 2022. (*Id.* at ¶ 21). At the time Warman enrolled, the University was made aware of Warman's medical history and disabilities. (*Id.* at ¶ 22). Throughout Warman's tenure as a student, he satisfied all academic criteria to remain in good standing. (*Id.* at ¶¶ 24-25).

In August 2021, the University initiated a COVID-19 vaccination policy (the "Policy"). (*Id.* at ¶ 29). The Policy required all current students and employees to submit proof of their vaccination status by December 15, 2021, unless they received an approved exemption. (*Id.* at ¶ 47). Exemption requests were due by November 1, 2021. (*Id.*)

Warman is a devout Catholic and states that his sincerely held religious beliefs prevent him from taking a COVID-19 vaccine. (*Id.* at ¶ 45). On September 9, 2021, Warman "completed a detailed and thoughtful explanation as to why he could not take the COVID-19 vaccine based on his sincerely held religious beliefs, and thus sought a religious exemption from the school's policy." (*Id.* at ¶ 46).

On September 15, 2021, before receiving a response to his exemption request, Police Chief Koo called Warman to campus to discuss his refusal to receive the vaccine. (*Id.* at ¶ 48). When Warman arrived, Chief Koo and Captain Koopman took Warman into a back room of the campus police station and would not allow him to leave. (*Id.* at

2

¶ 49). Chief Koo and Captain Kooperman made multiple comments about Warman's refusal to receive the vaccine, insulted his religious beliefs, stated Warman was looking for an excuse to leave the program, and pressured Warman to receive the vaccine. (*Id.* at ¶¶ 50-59). After 70 minutes, Warman was allowed to leave. (*Id.* at ¶ 65).

Two days later, the Police Department posted a memorandum, addressed to all officers, with a picture of Warman, which read as follows:

> Below is the photograph of Matthew Warman. If you see him on Campus, stop him and check to see how he is doing. Politely ask why he is here. You are not to arrest him or tell him to leave Campus. Just keep an eye on him. (Keep in mind that he is a student here and has the right to be on Campus).

(*Id.* at ¶ 67; *id.* at Ex. A, PageID 115)). Warman states the Police Department then engaged in constant intimidating and harassing behavior. (*Id.* at ¶¶ 68-69, 73, 85-88).

Warman's request for religious exemption was denied on September 20, 2021. (*Id.* at ¶ 70). On September 21, he met with Defendant Elliot, the Director of Mission and Ministry, who told Warman that he was morally obligated to get the vaccine. (*Id.* at ¶ 74). Warman appealed the University's denial the following day. (*Id.* at ¶ 77). On October 4, 2021, Warman's exemption request was again denied. (*Id.* at ¶ 82). Warman then dropped out of school. (*Id.* at ¶ 92).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a)

requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986) ). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id.* (citing Fed. Rule Civ. P. 8(a)(2)).

4

### III. ANALYSIS

Defendants bring forth various arguments as to why the entire amended complaint should be dismissed. (Doc. 10). Warman responds to Defendants' legal arguments, in part relying on allegations that are not part of the amended complaint. (Doc. 15; *see also*, Doc. 16 at 4-5 (collecting allegations in Plaintiff's opposition which do not appear in the amended complaint)). Warman also requests leave to amend his complaint based on "newly discovery evidence." (Doc. 15 at 8).

"As a general rule, a court considering a motion to dismiss 'must focus only on the allegations in the pleadings.'" *Waskul v. Washtenaw Cnty. Cmty. Mental Health*, 979 F.3d 426, 440 (6th Cir. 2020) (quoting *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). "This does not include plaintiff['s] responses to a motion to dismiss." *Id.* (citation omitted). Plaintiff "cannot 'amend [his] complaint in an opposition brief or ask the court to consider new allegations (or evidence) not contained in the complaint.'" *Id.* (citation omitted). "If plaintiff[] believe[s] that [he] need[s] to supplement [his] complaint with additional facts to withstand a motion for judgment on the pleadings (or a motion to dismiss), [he has] a readily available tool: a motion to amend the complaint under Rule 15." *Bates*, 958 F.3d 470, 483 (6th Cir. 2020).

Rule 15 requires that "leave to amend be freely granted when justice so requires." Fed. R. Civ. P. 15(a)(2). The Sixth Circuit has held that "where a more carefully drafted complaint *might* state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 644 (6th Cir. 2003) (quoting *EEOC v.*

*Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993)) (emphasis added). However, denial of an amendment may be appropriate where there is "[u]ndue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and futility of amendments." *Coe v. Bell*, 161 F.3d 320, 341 (6th Cir. 1998).

Moreover, unless a party may amend as a matter of course or a party receives the opposing party's consent, the appropriate mechanism when asking for leave to amend is by filing a motion. Fed. R. Civ. P. 15(a); *see also Evans v. Pearson Enterprises, Inc.*, 434 F.3d 839, 853 (6th Cir. 2006) ("Requesting leave to amend under Fed. R. Civ. P. 15(a) is governed by Fed. R. Civ. P. 7(b), which requires that a motion "shall state with particularity the grounds therefor ...."). If a party fails to formally move for leave to amend, such as burying the request in a responsive pleading, the Court has discretion when deciding whether to grant leave to amend. *See Robbins v. New Cingular Wireless PCS, LLC*, 854 F.3d 315, 322 (6th Cir. 2017).

The Court, in its discretion, will grant Warman leave to file an amended complaint. Justice so requires that Warman be granted leave to amend. Specifically, Warman seeks to add "newly discovered evidence" that he "was denied a medical exemption," to bolster his Americans with Disabilities Act claim. (Doc. 15 at 31, n.7). True, Warman's request is not formally presented in a motion. However, Defendants will not be prejudiced by granting Warman leave to amend. The case is in its early stages and there will be little delay.

6

Moreover, granting Warman leave to amend best serves judicial economy. Warman included new allegations in his opposition, allegations which *might* state a claim. Thus, Warman is given one final chance to amend his complaint before the Court considers Defendants' arguments for dismissing the entire complaint with prejudice. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 445 (6th Cir. 2014) (quotation omitted) ("Rule 15's permissive amendment policy should not permit plaintiffs to use the court as a sounding board to discover holes in their arguments, then reopen the case by amending their complaint to take account of the court's decision."); *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 (6th Cir. 2008) (cleaned up) ("Plaintiffs are not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies.").

## IV. CONCLUSION

Based upon the foregoing, Defendants' motion to dismiss (Doc. 10) is **DENIED**. Plaintiff is granted leave to file an amended complaint **within 21 days** of this Order. Failure to timely amend the complaint will result in dismissal with prejudice.

**IT IS SO ORDERED.**

Date:  1/25/2023                                     s/Timothy S. Black
                                                      Timothy S. Black
                                                      United States District Judge