UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| MATTHEW WARMAN, | : | Case No. 1:22-cv-229 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| MOUNT ST. JOSEPH UNIVERSITY, *et al.*, | : | |
| | : | |
| Defendants. | : | |

ORDER GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS
AND TERMINATING THIS CASE IN THIS COURT

This civil case is before the Court on Defendants Mount St. Joseph University ("MSJU"), Mount St. Joseph University Police Department ("MSJPD"), Kevin Koo, Norb Koopman, Karen Elliott, Amy Metzger a/k/a Amy Denko, Paige Ellerman, and Nancy Hinzman (collectively, the "MSJU Defendants")'s joint motion to dismiss (Doc. 23) and the parties' responsive memoranda (Docs. 28, 30).[1]

---

[1] Plaintiff also asserted claims against Ron Willison (often incorrectly named "Williston" in the Second Amended Complaint) and the Federal Bureau of Investigation ("FBI").  Willison and the FBI moved to dismiss for lack of jurisdiction.  (Doc. 33).  Prior to responding and after receiving numerous extensions of time, Plaintiff, Willison, and the FBI filed a stipulated dismissal without prejudice pursuant to Fed. R. Civ. P. 41.  (Doc. 36).  This was an improper stipulation of dismissal since it did not dismiss the entire action and was not signed by all parties who have appeared.  *See* Fed. R. Civ. 41(a)(1)(A); *Igo v. Sun Life Assurance Co. of Canada*, 652 F. Supp. 3d 929, 936 (S.D. Ohio 2023) ("The Sixth Circuit interprets Rule 41 as permitting a plaintiff to dismiss only the entire action, not individual claims or parties.") (citing cases).  Nevertheless, the Court finds just terms to dismiss without prejudice Plaintiff's claims against Willison and the FBI.  *See* Fed. R. Civ. P. 21 ("on its own, the court may at any time, on just terms, add or drop a party").  Accordingly, all claims against Willison and FBI shall be dismissed without prejudice. Willison and the FBI's motion to dismiss (Doc. 33) shall be **terminated as moot**.

## I. BACKGROUND[2]

The following facts are as alleged in the Second Amended Complaint ("SAC"). (Doc. 18).[3]

Plaintiff Matthew Warman, a devout Catholic, served in the United States Marines from 2014 until 2018 when he was medically discharged due to internal injuries and brain tumors. (*Id.* at ¶¶ 22, 47). Around December 2020, Plaintiff enrolled at MSJU, a private-Catholic institution, in the graduate nursing program. (*Id.* at ¶ 23). When he enrolled, MSJU was advised that Plaintiff suffered from medical disabilities, including post-discharge depression and anxiety. (*Id.* at ¶ 24). MSJU was also aware that Plaintiff's schooling was being paid for with Veteran Administration benefits. (*Id.* at ¶ 25). At all relevant times, Plaintiff satisfied all academic criteria to complete his degree. (*Id.* at ¶¶ 26-27).

In the late summer/early fall of 2021, in response to the COVID-19 pandemic, MSJU initiated a COVID-19 vaccination policy (the "Policy"). (*Id.* at ¶¶ 31, 50). The Policy was created and carried out by MSJU employees Elliott (Director of Mission and

---

[2] Both parties include a number of outside sources. (*E.g.*, Doc. 23 at 49-58; Docs. 29, 29-1, 29-2, 29-3). A court evaluating a motion to dismiss is generally limited to consideration of the complaint and any exhibits attached to the complaint." *Father Flanagan's Boys Home v. Donlon*, 449 F. Supp. 3d 739, 745 (S.D. Ohio 2020). If the Court does not exclude matters outside of the pleadings, it must convert the motion to one for summary judgment. Fed. R. Civ. P. 12(d). Here, the Court excludes all matters submitted by both parties outside the pleadings and will only consider the plausible allegations of Plaintiff's Second Amended Complaint.

[3] As discussed *supra*, the Court dismissed Willison and the FBI. As discussed *infra*, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Thus, the Court only details the plausible allegations of the SAC that relate to Plaintiff's federal claims against the MSJU Defendants.

Ministry), Metzger (Health Services Manager), Ellerman (General Counsel), and Hinzman (Assistant Dean, Department of Nursing). (*Id*. at ¶ 51, ¶¶ 11-14). The Policy required all current students and employees to be fully vaccinated and to submit proof of vaccination by December 15, 2021, unless the student or employee received a MSJU-approved exemption request. (*Id*. at ¶ 50). Students and employees were required to submit exemption requests by November 1, 2021. (*Id*.)

Around September 9, 2021, Plaintiff submitted an exemption request, asserting that taking the vaccine was against his sincerely held religious beliefs. (*Id*. at ¶ 48). Plaintiff also allegedly submitted a letter from his doctor concluding that Plaintiff "has a medical need to avoid taking the COVID vaccines." (*Id*. at ¶ 49). On September 20, 2021, Metzger denied Plaintiff's religious exemption request. (*Id*. at ¶ 78). The denial did not consider Plaintiff's medical exemption request. (*Id*. at ¶ 80).

Prior to the denial, on September 15, 2021, Koo (Chief of MSJPD) and Koopman (Captain of MSJPD) called and emailed Plaintiff six times, requesting to speak with Plaintiff about his decision not to receive the vaccine. (*Id*. at ¶ 54). That day, Plaintiff went to the campus police station. (*Id*. at ¶ 55). Koo and Koopman then allegedly took Plaintiff into a back room of the station and began speaking at Plaintiff, telling him that he was an idiot and should get a new religion, that he should get the vaccine, that he was only using his exemption request as an excuse to leave the program, and that they would take him to go get vaccinated, among other things. (*Id*. at ¶¶ 56-69). Plaintiff remained at the station for approximately 70 minutes, until he left because Elliott was unable to come to the station. (*Id*. at ¶¶ 70, 72).

3

On September 17, 2021, MSJPD posted a memorandum at the station related to Plaintiff, which stated as follows:

> Below is the photograph of [Plaintiff]. If you see him on Campus, stop him and check to see how he is doing. Politely ask him why he is here. You are not to arrest him or tell him to leave Campus. Just keep an eye on him. (Keep in mind that he is a student here and has the right to be on Campus.)

(*Id.* at ¶ 74; Doc. 8 at 31).

On September 20, 2021, Plaintiff was approached by Koopman outside of one of his classes, and Koopman asked what he was doing there. (Doc. 18 at ¶ 77). On September 21, 2021, Plaintiff was called to Elliott's office, during which meeting Koopman stationed himself outside the door. (*Id.* at ¶ 83). Plaintiff told Elliott that the police were harassing him, which statement Elliott purportedly ignored. (*Id.* at ¶ 83). During the meeting, Elliott explained to Plaintiff that he was morally obligated to get vaccinated and to follow Pope Francis' position for getting vaccinated. (*Id.* at ¶¶ 84-85).

On September 22, 2021, Plaintiff appealed the denial of his exemption, explaining that his sincerely held religious belief precluded him from receiving the vaccine. (*Id.* at ¶ 87).[4] Plaintiff also contacted Cincinnati Children's Hospital Medical Center, where he was set to perform his clinical work, to inquire about a religious exemption to taking the vaccine. (*Id.* at ¶¶ 88-89). However, on September 30, 2021, Hinzman informed Plaintiff that he could not contact the hospital about an exemption, and that he needed to seek an exemption through MSJU. (*Id.* at ¶ 90).

---

[4] Plaintiff does not allege that he appealed the denial of his purported medical exemption request.

4

On October 4, 2021, Metzger denied Plaintiff's appeal. (*Id.* at ¶ 92). Because Plaintiff's exemption request was denied, Plaintiff was unable to complete his studies, clinical work, and degree. (*Id.* at ¶ 94).

From these allegations, Plaintiff asserts 21 causes of action, including violation of civil rights, 42 U.S. § 1983, as to all Defendants other than the FBI and Willison (Count 1); Rehabilitation Act, 29 U.S. C 793, as to all Defendants other than the FBI and Willison (Count 2); equal protection, 42 U.S.C. § 1983, as to all Defendants other than the FBI and Willison; and wrongful arrest and detention, 42 U.S.C. § 1983, as to MSJPD, Koopman, and Koo. (Doc. 18 at ¶¶ 119-201). And the MSJU Defendants now move to dismiss all causes of action asserted against the MSJU Defendants. (Doc. 23).

## II. STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." To show grounds for relief, Fed. R. Civ. P. 8(a) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief."

While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations,' ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a

legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265 (1986) ). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible where a "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief,'" and the case shall be dismissed. *Id.* (citing Fed. Rule Civ. P. 8(a)(2)).

### III. ANALYSIS

#### A. Federal Claims (Counts 1, 2, 3, and 16)

The Court first considers the MSJU Defendants' arguments for why Plaintiff's federal claims should be dismissed, since Plaintiff's federal claims are the basis for the Court's jurisdiction. (*See* Doc. 18 at ¶ 19).

##### 1. *Mount St. Joseph Police Department*

MSJPD first argues that the claims against MSJPD must be dismissed because MSJPD is not a separate legal entity from MSJU. (Doc. 23 at 9). Plaintiff responds that MSJPD must be kept in the action because "no state actor other than MSJPD is charged with oversight of Koopman and Koo." (Doc. 28 at 28). However, in the SAC, Plaintiff

6

alleges that MSJU "was a state actor with respect to the actions of the police department," which department "is under the dominion and control of MSJU." (Doc. 18 at ¶¶ 7-8). Indeed, MSJPD is an arm of MSJU, "is not its own entity, and is not capable of being sued (i.e., it is not sui juris)." *Hale v. Vance*, 267 F. Supp. 2d 725, 737 (S.D. Ohio 2003); *see also Lawson v. City of Youngstown*, 912 F. Supp. 2d 527, 531 (N.D. Ohio 2012) (collecting cases). Thus, MSJPD is not *sui juris*, may not be sued in its own right, and the federal claims against MSJPD are **DISMISSED with prejudice**.

    2.  *Constitutional Violations Against the Collective MSJU Defendants (Counts 1 and 3)*

The Court starts with Plaintiff's federal claims against the MSJU Defendants—Count 1 (civil rights violations, 42 U.S.C. § 1983) and Count 3 (equal protection, 42 U.S.C. § 1983)—collectively. The MSJU Defendants raise various arguments as to why these claims should be dismissed.

    a.  <u>Group Pleading</u>

The MSJU Defendants first argue that these counts must be dismissed because Plaintiff engages in impermissible group pleading by collectively and without specificity alleging these claims against all the MSJU Defendants. (Doc. 23 at 10). Tellingly, Plaintiff's only response to this argument is that he may group plead "for any and all Counts if such Counts are believed to apply to all Defendants ". (*See* Doc. 28 at 6, n.6).[5]

---

[5] The MSJU Defendants raised this same argument in their motion to dismiss the first amended complaint. (Doc. 10 at 8-9). And despite being granted leave to amend (Doc. 17), Plaintiff did not cure any such pleading deficiencies. Moreover, despite being granted two extensions of time to respond to the motion to dismiss the SAC (and despite being granted four extensions of time to respond to the MSJU Defendants' first motion to dismiss), Plaintiff did not provide any meaningful response to this argument.

7

"When claiming damages for violations of constitutional rights, [p]laintiffs 'must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right.'" *Ondo v. City of Cleveland*, 795 F.3d 597, 610 (6th Cir. 2015) (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (emphasis in original)); *see also McKenna v. Bowling Green St. Univ.*, 568 F. App'x 450, 460 (6th Cir. 2014) ("Simply put, to establish liability ..., an individual must show that his or her own rights were violated, and that the violation was committed personally by the defendant.") (quotation marks and citation omitted) (emphasis in original). Therefore, to establish § 1983 liability against a person in their individual capacity, the plaintiff "must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Iqbal*, 556 U.S. at 676.

Here, Plaintiff engages in impermissible "group pleading." Specifically, in Count 1, Plaintiff alleges as follows:

> 121. Upon and belief, Defendants, or some of them, conspired to violate and/or did actually violate the free exercise of [Plaintiff]'s religion, and his right to bear arms, which rights are protected by the First, Second, Fourth, and Fourteenth Amendments of the United States Constitution, and provisions of the Ohio Constitution.
>
> 122. Defendants, individually and in concert with one another at various times, and in various iterations, acted to discriminate and/or retaliate against [Plaintiff] for his freely exercising his religious preference, based upon his sincerely held beliefs, not to be vaccinated

(Doc. 18 at ¶¶ 121-122). Then, in Count 3, Plaintiff alleges as follows:

> 131. Defendants intentionally treated [Plaintiff] differently than all such similarly situated individuals.

8

(*Id.* at ¶ 130). By lumping "all Defendants other than FBI and Williston" together in these claims, each defendant is left guessing what each defendant did to violate Plaintiff's First, Second, Fourth, and Fourteenth Amendment rights, violating Fed. R. Civ. P. 8(a).[6]

b. <u>Non-State Actors</u>

Defendants Elliot, Metzger, Ellerman, Hinzman, Koopman, Koo, and MSJU also argue that Counts 1 and 3 must be dismissed against them because they are not state actors. (Doc. 23 at 17-20).

"In order to prevail on a civil rights claim under 42 U.S.C. § 1983, [a plaintiff] must establish that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States." *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009). When determining whether a private party's action is attributable to the state, "[t]he Supreme Court has identified three tests for assessing state action: (1) the public-function test, (2) the state-compulsion test, and (3) the nexus test." *Lindke v.*

---

[6] Although not a term used regularly within the Sixth Circuit, Plaintiff's SAC is an impermissible "shotgun pleading." A "shotgun pleading comes in a variety of types, the characteristic unifying all types of shotgun pleadings is that they make it virtually impossible for a defendant to know which allegations of fact are intended to support which claims for relief." *Arnold v. CooperSurgical, Inc.*, No. 2:22-CV-1951, --- F. Supp. 3d. ----, 2023 WL 4552154, at *13 (S.D. Ohio July 10, 2023) (collecting cases); *see also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015) (describing four rough types of shotgun pleadings: (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint;" (2) a complaint "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief;" and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."). And the SAC appears to be guilty of nearly all these sins, even after the Court granted Plaintiff leave to file a second amended complaint.

9

*Freed*, 37 F.4th 1199, 1202 (6th Cir. 2022) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

i. *Public Function*

"Under the public function test, a private party is deemed a state actor if he or she exercised powers traditionally reserved exclusively to the state." *Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003). "The public function test has been interpreted narrowly. Only functions like holding elections, exercising eminent domain, and operating a company-owned town fall under this category of state actions." *Id.* (internal citations omitted). Here, there are no allegations that the private individuals exercised powers traditionally reserved exclusively to the state. Indeed, universities have long been both private and public institutions.

ii. *State-Compulsion*

"The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (citations omitted). "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Id*. Here, there are no allegations that the state exercised such coercive power over MSJU and the private individuals to deem the private parties as state actors.

iii. *Nexus*

"Under the symbiotic or nexus test, a section 1983 claimant must demonstrate that there is a sufficiently close nexus between the government and the private party's

10

conduct so that the conduct may be fairly attributed to the state itself." *Chapman v. Higbee Co.*, 319 F.3d 825, 834 (6th Cir. 2003). "The inquiry is fact-specific, and the presence of state action is determined on a case-by-case basis." *Id.* (citing *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961)). However, state regulation, the receipt of public funds, the use of public property, the minority presence of public officers on a private entity's board, state approval of private activity, and the utilization of public services do not convert private action into state action. *Lansing v. City of Memphis*, 202 F.3d 821, 830 (6th Cir. 2000) (collecting cases); *see also Cox ex rel. Dermitt v. Liberty Healthcare Corp.*, 622 F. Supp. 2d 487, 494–95 (E.D. Ky. 2008) ("Numerous cases illustrate the restrictive approach the Sixth Circuit has taken with the nexus test, similar to its interpretation of the public function test.").

Here, the basis of Counts 1 and 3 is the MSJU Defendant's implementation of the Policy and the MSJU Defendant's denial of Plaintiff's exemption request pursuant to the Policy. (*E.g.*, Doc. 18 at ¶¶ 31, 48, 122, 129). "Sixth Circuit courts have found [that] private companies were not state actors when establishing COVID-19 vaccine mandates." *Collins v. Tyson Foods, Inc.*, No. 1:22-CV-00076-GNS, 2023 WL 2731047, at *2 (W.D. Ky. Mar. 30, 2023) (collecting cases). This case is no different. MSJU is a private entity and its employees are private persons that established a COVID-19 vaccine policy. Defendants Elliot, Metzger, Ellerman, Hinzman, Koopman, Koo, and MSJU are not state actors with regards to Counts 1 and 3 and cannot be sued pursuant to 42 U.S.C. § 1983.

11

c. <u>Equal Protection (Count 1)</u>

As a final matter, the MSJU Defendants argue that Plaintiff's equal protection claim should be dismissed for failure to state a claim because Plaintiff fails to allege that he was treated differently than a similarly situated person. (Doc. 23 at 21).

The Equal Protection Clause of the Fourteenth Amendment commands that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "To state an equal protection claim, a plaintiff must adequately plead that the [state actor] treated the plaintiff disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis." *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) (quotation omitted).

Here, Plaintiff does not identify any similarly situated person, let alone that such similarly situated person was treated more favorably than him. The SAC alleges that "[n]umerous individuals attended MSJU and otherwise were similarly situated to [Plaintiff], and upon information and belief, other sought religious and/or medical exemptions," and that "Defendants intentionally treated [Plaintiff] different than all such similarly situated individuals." (Doc. 18 at ¶¶ 129-130). And such conclusory allegations fail to state an equal protection claim. *E.g.*, *Ctr. for Bio-Ethical Reform, Inc.*, 648 F.3d at 379 ("Plaintiffs fail to make any comparison to similarly situated groups…"); *Bertovich v. Vill. of Valley View, Ohio*, 431 F. App'x 455, 458 (6th Cir. 2011) (affirming dismissal of complaint when plaintiff failed to "point to any individual who was treated differently").

12

Accordingly, for all these reasons, Count 1 and Count 3 are **DISMISSED with prejudice** for failure to state a claim.

### 3. Wrongful Arrest/Detention Against Koopman, Koo, and MSJU (Count 16)

In Count 16, Plaintiff asserts a wrongful arrest/detainment claim against Defendants Koopman, Koo, and MSJU pursuant to 42 U.S.C. § 1983. (Doc. 18 at ¶¶ 182-185). Koopman and Koo argue that qualified immunity bars this claim. (Doc. 23).

"In order to overcome a defendant's qualified immunity defense at the motion to dismiss stage, a plaintiff must plausibly allege facts showing '(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.'" *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)). When a defendant raises a qualified immunity defense, the plaintiff bears the burden of showing that an officer is not entitled to the defense of qualified immunity. *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). The Sixth Circuit has cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity" given the fact incentive nature of the test. *Wesley v. Campbell*, 779 F.3d 421, 433 (6th Cir. 2015). However, "'[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.'" *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

13

Plaintiff argues there is clearly established right because there is a clearly established right to be free from unreasonable searches and seizures. (Doc. 28 at 37). And the Court agrees that such right is inherent in the Constitution. But Plaintiff has not plausibly pled that Koopman or Koo violated that constitutional right.

The Fourth Amendment guarantees that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...." However, these safeguards of the Fourth Amendment, "with respect to police/citizen contact, vest only after [a] citizen has been seized." *United States v. Richardson*, 949 F.2d 851, 855 (6th Cir. 1991). A seizure occurs where, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). Examples of circumstances that indicate a seizure include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *Id.*; *see also United States v. McCall*, 433 F. App'x 432, 437 (6th Cir. 2011) ("[The Sixth Circuit] has further elaborated factors for determining whether a person would feel free to leave: '(1) [T]he purpose of the questioning; (2) whether the place of the questioning was hostile or coercive; (3) the length of the questioning; and (4) other indicia of custody such as … whether the suspect possessed unrestrained freedom of movement during questioning; and whether the suspect initiated contact with the police.'" (quoting *United States v. Swanson*, 341 F.3d 524, 529 (6th Cir. 2003))).

14

Here, even when viewing all plausible allegations in light most favorable to Plaintiff, a seizure did not occur. As an initial matter, the SAC is devoid of any allegations that Plaintiff was compelled to meet with Koopman and Koo. Indeed, Plaintiff alleges that he received several calls and emails requesting he meet with Koo to discuss his decision to refuse the vaccine before Plaintiff made the choice to go to campus and speak with Koopman and Koo. And although the officers allegedly used aggressive language, the SAC is also devoid of any allegations that, once Plaintiff voluntarily showed up to talk with Koopman and Koo, he was compelled to continue meeting with Koopman and Koo, that he asked to leave and was denied that opportunity, that Koopman and Koo actually told him he was not allowed to leave, that Koopman and Koo touched him, that Koopman and Koo displayed a weapon, or that he was questioned about any sort of illegal activity (which would suggest an indicia of custody).

To be sure, Plaintiff alleges that he felt that he was not free to leave. And the facts as pled suggest that Koopman and Koo were trying to bully Plaintiff into getting a vaccine. But the test for whether a seizure occurs is whether, in view of all the circumstances surrounding the incident, a *reasonable* person would have believed that he was not free to leave. And given the circumstances alleged in the SAC, a reasonable person would believe that he was free to leave. Accordingly, because Plaintiff has not alleged facts showing that the Koopman and Koo violated a constitutional right, Koopman and Koo are entitled to qualified immunity on Count 16 and Count 16 is **DISMISSED with prejudice**.

    4.  *Rehabilitation Act (Count 2)*

In Count 2, Plaintiff asserts a violation of the Rehabilitation Act, 29 U.S.C. § 793 *et seq.* against the MSJU Defendants. (Doc. 18 at 24, ¶¶ 124-127). The MSJU Defendants first argue that this count should be dismissed because "Section 793 concerns discrimination in *employment* under federal contracts, and since the [Amended] Complaint does not also allege that [Plaintiff] was employed by MSJ, Section 793 is inapplicable to this matter." (Doc. 23 at 21). Plaintiff does not respond to this argument; accordingly, to the extent Plaintiff is asserting a 29 U.S.C. § 793 claim, that claim is dismissed with prejudice.

The MSJU Defendants, for the sake of judicial expediency, also argue that, to the extent Plaintiff attempted to assert a claim under Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, that claim should also be dismissed for failure to state a claim. Specifically, the MSJU Defendants argue that Plaintiff fails to state a Section 504 claim because Plaintiff fails to allege a "nexus between his enumerated disabilities and receiving a Covid vaccination." (*Id.* at 24).

A claim of discrimination under Section 504 requires a plaintiff to show:

> (1) The plaintiff is a "handicapped person" under the [law]; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, or being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap; and (4) The relevant program or activity is receiving Federal financial assistance.

*G.C. v. Owensboro Pub. Schs.*, 711 F.3d 623, 635 (6th Cir. 2013) (quoting *Campbell v. Bd. of Educ. of Centerline Sch. Dist.*, 58 F. App'x 162, 165 (6th Cir. 2003)).

16

The crux of Plaintiff's Section 504 claim is that Plaintiff was forced to stop attending MSJU because MSJU failed to grant him a medical exemption to MSJU's vaccine requirement. But the SAC fails to allege that Plaintiff was forced to stop attending MSJU solely by the reason of his disabilities.

As alleged in the SAC, Plaintiff suffers or suffered from anxiety, depression, brain tumors, and internal injuries, many or all of which were the result of his time served in the Marines. (*E.g.*, Doc. 18 at ¶¶ 2, 5, 22 ,24 ,73, 114, 134). And although the Court does not take lightly Plaintiff's conditions resulting from his service to this country, the SAC fails to allege that MSJU discriminated against him (*i.e.*, forced him to stop attending MSJU by refusing to grant his medical exemption request to being vaccinated) because of these disabilities.

To be sure, the SAC alleges that "[Plaintiff] submitted a medical exemption letter from his doctor, Daved E. Schleuter, M.D. of the Department of Veteran's Affairs Medical Center" to MSJU that concluded that Plaintiff "has a medical need to avoid taking the COVID vaccines." (Doc. 18 at ¶ 49).[7] But Plaintiff does not allege what medical condition led to his "need to avoid taking the vaccine." *Cf.*, *Together Emps. v. Mass Gen. Brigham Inc.*, 573 F. Supp. 3d 412, 434 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022) (citing *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 411 (8th Cir. 2018)) ("And where the claimed disability is not a contraindication for the vaccine, the requested

---

[7] In this paragraph of the SAC, Plaintiff quotes the letter's conclusion that he "has a medical need to avoid taking the COVID vaccine." But he does not attach the letter to his SAC or otherwise provide the letter, so the Court is unable to verify whether that quotation is accurate.

17

accommodation does not sufficiently relate to the claimed disability.").[8] Nor does Plaintiff allege that he has a contraindication for the vaccine. Thus, to the extent Plaintiff asserted a Section 504 claim, that claim is dismissed with prejudice.

Accordingly, Count 2 is **DISMISSED with prejudice**.

### B.     State Claims (Counts 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15)

Pursuant to 28 U.S.C. § 1367(c)(3), district courts may decline to exercise supplemental jurisdiction over state law claims once they have dismissed all claims over which they had original jurisdiction. "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996).

Here, having dismissed all the federal claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. Accordingly, Counts 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 are **DISMISSED without prejudice**.

### IV.     CONCLUSION

Based upon the foregoing, Defendants' joint motion to dismiss (Doc. 23) is **GRANTED in part**. Plaintiff's federal claims, Counts 1, 2, 3, and 16, are **DISMISSED with prejudice**. The Court **DECLINES** to exercise supplemental jurisdiction over

---

[8] The CDC considers a "history of severe allergic reaction (*e.g.*, anaphylaxis) after a previous dose or to a component of the COVID-19" to be a COVID-19 vaccination contraindication. *See* Interim Clinical Considerations for Use of COVID-19 Vaccines in the United States, Centers for Disease Control and Prevention, *available at*: https://www.cdc.gov/vaccines/covid-19/clinical-considerations/interim-considerations-us.html#contraindications (last visited Dec. 20, 2023).

Plaintiff's remaining state law claims. Accordingly, Counts 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15 are **DISMISSED <u>without</u> prejudice**. There being no remaining counts against any Defendants, the Clerk shall enter judgment and terminate the case.

    **IT IS SO ORDERED.**

Date: <u>January 3, 2024</u>                          <u>*s/ Timothy S. Black*</u>
                                                                       Timothy S. Black
                                                                       United States District Judge